UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED SERVICE WORKERS UNION LOCAL 339, INTERNATIONAL UNION OF JOURNEYMEN AND ALLIED TRADES,<br><br>*Plaintiff*,<br><br>-v-<br><br>THE CITY OF NEW YORK,<br><br>*Defendant.* | 21 Civ. __5469__<br><br>**COMPLAINT** |

Plaintiff United Service Workers Union Local 339, International Union of Journeymen and Allied Trades ("Local 339"), by and through its attorneys, Morvillo Abramowitz Grand Iason & Anello P.C., on behalf of itself and its members, for its Complaint, alleges as follows:

## NATURE OF THE ACTION

1.       This is an action to declare unlawful, and enjoin the enforcement of, a recently passed ordinance of the City of New York (the "City"), Local Law 55 for the year 2019, and associated implementing rules and forms (together, the "Ordinance"), which violate federal and New York State law by imposing unlawful restrictions on labor unions and their officers that represent employees engaged in the collection of waste from private sector commercial establishments in New York City (the "trade waste industry").

2.       Under the guise of an ordinance purporting to protect workers in the New York City trade waste industry, the City has constructed an insidious, onerous, and invasive regulatory scheme that is preempted by federal law and the New York State Constitution because it improperly discourages *any* union from representing trade waste industry workers; restricts the

federally protected rights of workers to bargain collectively through representatives of their own choosing; imposes standards for disqualification and authorizes a City agency to disqualify duly elected union officers on grounds unknown under federal law; burdens and penalizes conduct of union members and officers in violation of federal and state law; affords a City agency virtually unfettered discretion to invade the privacy of unions and their officers; and restricts the right of union officials to associate with members of their own union.

3.     The Ordinance requires unions representing workers in the trade waste industry to register with the New York City Business Integrity Commission ("BIC"), a City agency, by July 1, 2021, and mandates extensive disclosures by unions and their officers in connection with such registration.  Contrary to federal preemption, the Ordinance further authorizes BIC to disqualify a person from holding office in a labor union, and impose monetary penalties, based on a failure to comply with the Ordinance.

4.     Among the preconditions to registration imposed by BIC is a requirement that unions and each of their officers execute an open-ended consent form ("Release Authorization"), authorizing BIC to obtain *any* information from *any* source without regard to the relevance, confidentiality or privacy interests implicated by such information—and all without notice to the union officer who executed the Release Authorization.

5.     The Release Authorization would allow BIC, without the need for probable cause, notice, legal process or review, to obtain vast (and virtually unlimited) deeply private, personal and confidential information concerning officers of labor unions, including:  their internet browsing history; communications between union officers, their spouses or children; medical or psychological records; emails and text-messages on any subject; GPS location-tracking data; and

records reflecting a union officer's political opinions and associations, sexual orientation, and religious beliefs.

6.      The Ordinance provides no mechanism for any person to challenge or obtain pre-compliance review of the collection or review of such intimate and private data by BIC.  Indeed, the Release Authorization expressly requires that Local 339 and its officers waive any right to be notified of, and have an opportunity to object to, BIC's request to third parties for such information, and further purports to authorize BIC to direct that any individual or entity from whom BIC seeks information not to provide notification of such request to Local 339 or its officers.  Nor does the Ordinance provide any assurance that BIC will protect the privacy and confidentiality of such material from disclosure to competitors, third parties, or the public.

7.      For the following reasons, enforcement of the Ordinance is unlawful, should be enjoined, and should be declared null and void.

8.      *First,* the Ordinance conflicts with and is preempted by the National Labor Relations Act ("NLRA"), which guarantees workers the right to "form, join or assist labor organizations" and to "bargain collectively through representatives of their own choosing." 29 U.S.C. § 157.   The Ordinance interferes with union members' rights to select and be represented by persons of their choosing by, among other things: (i) precluding union members from being represented by any person who is unwilling to relinquish privacy rights protected by the U.S. and New York State Constitutions; and (ii) threatening disqualification and fines for union officers who "associate" with members of their own union in a variety of circumstances, including when a union member has previously been convicted of certain offenses.

9.      *Second,* the Ordinance conflicts with and is preempted by the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§504, 521, by establishing new standards

for union officer disqualification and invading the U.S Department of Labor's role in investigating and enforcing federal laws defining when union officers may be disqualified from holding office or servicing a labor union.

10.    *Third,* just as it denies workers' rights protected under the NLRA, the Ordinance violates Article I, § 17 of the New York State Constitution, which guarantees that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

11.    *Fourth*, the Ordinance violates the First Amendment right of association of union officers and members by threatening disqualification and fines for union officers who "associate" with persons whom the union officer "should have known" were associated with an organized crime group or had prior convictions for certain offenses.  The Ordinance's threatened penalties are not limited to contacts or associations related to the trade waste industry, but rather purport to allow BIC to disqualify a union officer for constitutionally protected family and social relationships and lawful expressive association for political purposes.  The threat of disqualification for even unintentional association with prohibited persons, and the vagueness of the statute's operative words—"association," "associate of an organized crime group" and "should have known"—exacerbates the chilling effect.  Union officers will be reluctant to associate with any persons—including union members to whom the union is required under federal labor law to provide fair representation—if such persons have, or even *might* have, disqualifying criminal convictions or tenuous links to organized crime.

12.    *Fifth*, the Ordinance as implemented violates the Fourth Amendment of the United States Constitution by requiring Local 339 and its officers to disclose private and personal information in order to complete application forms promulgated and required by BIC as

a condition of registration.  Although the Ordinance purports to require unions and union officers to "consent" to such disclosure as a condition of registration, laws that require individuals to "waive" their Fourth Amendment rights as a condition for receipt of a government benefit are presumptively unlawful.   For the same reasons, the Ordinance violates Article I, § 12 of the New York State Constitution, which provides protections that go beyond those set out in the Fourth Amendment.

13.     *Sixth,* the Ordinance as implemented violates the New York City Administrative Procedures Act ("CAPA") because the application forms promulgated and required by BIC as a condition of registration impose material requirements, including the Release Authorization, which are not authorized by the Ordinance or by any administrative implementing rules promulgated by BIC in compliance with the CAPA—including "notice and comment" rule-making.

14.     Failure to enjoin the Ordinance will cause irreparable harm to Local 339, its officers, and members.  Absent an injunction, Local 339 will face a kind of "Sophie's Choice." It can comply with the unlawful demands of the Ordinance—a path that will require disclosure of sensitive and personal information to the City without any legal process.  As an alternative, Local 339 can cease conducting its lawful labor organizational functions, which will (i) cause its members to lose medical and other fringe benefits as well as other contractual protections; and (ii) harm Local 339's business, goodwill, and reputation.  As a third alternative, Local 339's officers can decline to comply with the Ordinance, an option that will subject the officers to monetary fines and disqualification from serving as a union officer; substantially interfere with the right of Local 339's members to select a representative of their choosing; and fracture the union internally, with the organization and/or its officers facing disqualification from

representing its membership in the trade waste industry in New York City, while ostensibly

remaining the collective bargaining representative of its non-carting industry members in and out

of the City

15.     The balance of equities favors Plaintiff, as unions in the trade waste industry

(including Local 339) already are heavily regulated at the federal level, and Plaintiff merely

seeks to preserve the status quo—which has been in effect for more than fifty years—while

Defendant pursues stricter regulation of unions in the trade waste industry.   Moreover, BIC's

willingness to hold the Ordinance's implementation in abeyance for the last year and half

demonstrates that BIC will suffer no prejudice from the preservation of the status quo.

More broadly, the City's regulatory oversight scheme for the trade waste industry has not applied

to unions and union officials since its inception twenty-five years ago.

## THE PARTIES

16.     Plaintiff Local 339 is a voluntary, unincorporated association and a "labor

organization" as defined in Section 2 of the National Labor Relations Act, as amended, 29

U.S.C. § 152(5).  Local 339 is one of numerous local unions affiliated with the United Service

Workers Union ("USWU"), a national union representing over 20,000 workers in a wide range

of industries, and the International Union of Journeymen and Allied Trades ("IUJAT"), an

international union.  IUJAT was established in 1874, and is among the oldest labor organizations

in the United States.

17.     Local 339 represents the interests of its members in connection with collective

bargaining and dealing with employers concerning grievances, and provides its members with

numerous important benefits, including employment protections, access to reasonably-priced

health insurance, and a 401(k) plan.  Local 339's approximately 1,650 members include employees in the New York City trade waste industry and its surrounding metropolitan counties.

18.    Defendant City of New York is a municipality of the State of New York.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983, and supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367.

20.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2).

21.    Local 339 has standing to bring this suit on behalf of its members because (a) its members and officers would otherwise have standing to sue in their own right; and (b) the interests that Local 339 seeks to protect are germane to the organization's purpose of representing and protecting the rights of workers in the trade waste industry.

## FACTUAL ALLEGATIONS

22.    Since 1956, the New York City Sanitation Department has not collected refuse from commercial properties; rather, the City requires that commercial establishments contract with private haulers (also referred to as "carting companies") for refuse removal.

23.    On February 28, 2019, the New York City Council passed the Ordinance, and it was signed into law by Mayor Bill de Blasio on March 18, 2019.  The Ordinance became effective on July 16, 2019.  The Ordinance amended New York City Administrative Code, Title 16-A, Chapter 1, to provide BIC with the authority to regulate labor unions representing employees in the trade waste industry.

24.    According to the bill's sponsor, New York City Council Member Antonio Reynoso, the Ordinance was intended to empower BIC to eradicate from the industry so-called

"sham unions," *i.e.* unions that, in the view of some local politicians, were overly conciliatory toward management, and insufficiently aggressive in advocating for their members' interests. Councilmember Reynoso stated the Ordinance was designed to allow BIC to "learn a great deal about who runs the union, and we can disqualify officials who should not be involved," such as representatives of unions who are not "good for the company and good for the workers."

25.     The Ordinance requires that unions representing trade waste industry workers register with BIC, and that such unions and their officers disclose information to BIC, including the names of the union's officers and agents, all pending civil actions to which an officer is a party, and all prior criminal convictions of such officers.  NYC Admin. Code § 16-505(c)-(d).  The Ordinance additionally authorized BIC to "issue and establish standards for the registration of labor unions or labor organizations representing or seeking to represent employees directly involved in the collection, removal, transportation or disposal of trade waste and for suspending or disqualifying officers of such unions or organizations."  NYC Admin. Code § 16-504(j).

26.     Pursuant to its authority under the Ordinance, BIC promulgated rules (the "Rules"), which became effective on July 23, 2019.  The Rules, codified at Title 17, Chapter 1 of the Rules of the City of New York, Sections 1-01 through 8-01, impose requirements for union registration, require disclosures by unions and union officers and agents, and permit BIC to disqualify union officers and impose financial penalties.  Significantly, the ordinance is broad enough to be read to require application of a union's or officer's disqualification not only to its work in the trade waste industry in the City, but to every aspect of the union's or officer's operations outside of the trade waste industry in the City and beyond the City's borders.

27.     The Rules require that all unions representing workers in the trade waste industry register with BIC, and require that as a condition of registration, unions and their officers disclose, among other things:

    a.  The names of all officers and agents of the union during the preceding five years;

    b.  All civil or criminal actions pending against such union or any officer in any jurisdiction;

    c.  All criminal convictions of any officer of such union (excluding juvenile adjudications and certain other categories of conviction for which disclosure is barred by New York law);

    d.  All criminal or civil investigations of any officer of such union during the preceding five years wherein the officer was the subject of the investigation or received a subpoena;

    e.  All civil or administrative proceedings to which the union has been a party involving allegations of racketeering;

    f.  All trade waste companies operating in New York City at which the union represents or seeks to represent employees directly involved in the collection, removal, transportation, or disposal of trade waste.

Rules, § 2-04(d).

28.     The Rules further require that in the event that the information disclosed to BIC changes at any time after submission to BIC, unions and their officers have an ongoing obligation to notify BIC within ten business days after the change occurs.  Rules, § 2-05(c).

29.     On or about June 23, 2019, Local 339 received a letter from BIC that directed Local 339 and its officers to complete and submit to BIC a registration application form and an

officer disclosure form (collectively, the "application forms").  BIC directed that the application

forms be submitted to BIC by October 14, 2019.

30.    On October 9, 2019, BIC agreed to extend by 60 days the deadline for submitting

applications for registration and related disclosures, to December 13, 2019.  On December 4,

2019, BIC granted a further extension of that application deadline to February 28, 2020.   On

February 18, 2020, BIC further extended the application deadline to March 31, 2020, and BIC

distributed revised application forms to applicable unions, including Local 339.  On May 19,

2020, BIC extended the application deadline to September 1, 2020.  On August 21, 2020, BIC

further extended the application deadline to January 29, 2021.  Most recently, on January 21,

2021, BIC extended the application deadline to July 1, 2021.

31.    The application forms, as revised, contain multiple significant requirements that

are not mandated by the Ordinance or the Rules.

32.    Most significantly, the application forms purport to require Local 339 and each of

its officers to execute a Release Authorization authorizing BIC to obtain *any* information from

*any* source, without regard to the relevance, confidentiality or privacy interests implicated by

such information.  The Release Authorizations also require that unions and their officers

expressly waive any right to be notified of, and have an opportunity to object to, BIC's request to

third parties for such information.

33.    The application forms also purport to require disclosure of an assortment of other

information that is not required by, or is broader in scope than, the disclosures required by the

Ordinance or the Rules.  By way of example, the application forms mandate disclosure of the

names of every employee of the union; whereas the Ordinance and Rules contain no such

requirement.  The application forms also require disclosure of all civil proceedings to which the

union or an officer has been a party in the preceding five years; whereas the Ordinance and Rules only require disclosure of *pending* civil proceedings. Throughout this period, Local 339's representatives, along with representatives of other unions in the trade waste space, engaged in ongoing discussions and negotiations with BIC, and representatives of the New York City Council and the Office of the Mayor, in an effort to address Local 339's objections to Local Law 55 and its implementation.  During these communications, Local 339 highlighted the numerous legal defects with the law and its implementation.  Local 339's efforts to secure the repeal or modification of Local Law 55 continued through June 2021.

34.    In June 2021, disregarding Local 339's concerns, the City Council proposed an amendment to the Ordinance that did not address any of the concerns raised by Local 339 regarding the legal flaws with the Ordinance and its implementation—including preemption and the undermining of the uniform national scheme intended by Congress, the violation of constitutional rights, and procedural defects.  The amendment exempts the trade waste workers of Teamsters Local 282, a competitor of Local 339, which, unlike Local 339, historically had connections to organized crime.  On June 17, 2021, the City Council passed the amendment.

35.    Notwithstanding Local 339's persistent efforts over approximately the last year and a half, which included highlighting numerous legal defects with the City Ordinance and its implementation, the City and BIC refused to modify the law to conform with constitutional and legal requirements.  The City Council's amendment does not alleviate the burdensome and illegal requirements that Local Law 55 and BIC's implementation impose on Local 339 and its officials and members.

36.    Local 339 remains subject to Local Law 55, the Rules, and BIC's implementation thereof.

### FIRST CLAIM FOR RELIEF
**(Injunctive and Declaratory Relief Based on Preemption by
the National Labor Relations Act and the Labor Management Reporting and
Disclosure Act, Pursuant to 42 U.S.C. § 1983 and
the Court's Equitable Powers)**

37.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

38.     The National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, preempts state or local laws that significantly and substantively interfere with the right of employees to select labor representatives of their choosing or with such representatives' performance of their duties.

39.     Section 1 of the NLRA declares a congressional purpose to "encourag[e] the practice and procedure of collective bargaining" and "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."  29 U.S.C. § 151.  Section 7 of the NLRA similarly guarantees employees the right "to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." 29 U.S.C. §157.

40.     The Ordinance improperly conflicts with the NLRA and LMRDA, 29 U.S.C. § 504(a), by interfering with union members' rights to select and be represented by persons of their choosing.  Among other things, the Ordinance (i) authorizes BIC to disqualify union officers who are not subject to disqualification under the qualification standards for union officers in the LMRDA; and (ii) conditions service as a union officer on executing a waiver of the officer's privacy rights.

41.     The Ordinance also conflicts with the NLRA by impairing the effectiveness of unions as bargaining agents.

42.     In addition, the Ordinance undermines the national uniformity mandated by federal labor law.  Local politics will inevitably exacerbate the "crazy quilt" of qualifications and other requirements imposed by municipalities across the country.  The result will be a patchwork of politically gerrymandered regulations, where municipalities are free to favor politically connected unions at the expense of their competitors.

43.     The burdensome and redundant layer of regulations (and expense of compliance) imposed by the Ordinance and its implementation, coupled with the requirement that officers waive wholesale their privacy rights, will drive reputable unions like Local 339 from the industry and significantly limit the pool of individuals willing to serve as a union officer in the unions that remain.

44.     The threat of draconian penalties and the ill-defined circumstances in which those penalties will be incurred also impairs federal labor policy.  By threatening permanent disqualification and fines for union officers who "associate" with people whom the union officer "should have known" were associated with an organized crime group or had prior convictions for certain offenses, the Ordinance inhibits organizational activity and debate by requiring union officers to act at their peril when communicating with members, prospective members, employers, and others in the industry.  The Ordinance also impedes Local 339's ability to comply with its federal obligation to fairly represent its members who have prior criminal convictions or associations, or members who are unwilling to provide disclosures to Local 339 regarding their prior criminal convictions and associations.

45.    The City and its officials, including BIC, imminently will enforce the Ordinance, including by requiring that Local 339 and its officers execute the application forms and Release Authorizations.

46.    Such conduct deprives Local 339 and its members of their federally-guaranteed right under the NLRA to "form, join or assist labor organizations" and to "bargain collectively through representatives of their own choosing."  29 U.S.C. § 157.

47.    Criteria for the disqualification of union officials were established by Congress and codified in the LMRDA, 29 U.S.C. § 504.

48.    Congress authorized two narrow carve-outs from the preemptive effect of the LMRDA. In 29 U.S.C. §§ 523(a) and 524a, Congress authorized States, under certain circumstances, to legislate other grounds affecting disqualification of union officials. These "carve-outs" for State laws are not applicable to the Ordinance of the City of New York.

49.    Investigations and enforcement of grounds for disqualification of union officials are vested in the United States Secretary of Labor. 29 U.S.C. § 521. The Ordinance impedes and intrudes on the Secretary's jurisdiction and enforcement role under the LMRDA because it creates disqualification standards unknown in the federal legislative scheme and appoints a City agency as the arbiter thereof.

50.    The actions of the City and its officials in enforcing the Ordinance are taken, or imminently will be taken, under color of state law, ordinance, regulation, custom or usage of the City.

51.    The actions of the City and its officials who are enforcing, or imminently will enforce the Ordinance, are pursuant to official municipal policy and custom.

52.     The actions of the City and its officials in enforcing the Ordinance has caused and will cause Local 339 and its members real and substantial injury.

53.     By virtue of the foregoing, the Ordinance is preempted by the NLRA and LMRDA, and enforcement of the Ordinance is barred by the Supremacy Clause of the United States Constitution.  Local 339 is entitled to declaratory and injunctive relief Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and New York Civil Practice Law and Rules § 8601.

**SECOND CLAIM FOR RELIEF**
**(Injunctive and Declaratory Relief Based on Violation of the Fourth Amendment of the United States Constitution, Pursuant to 42 U.S.C. § 1983 and the Court's Equitable Powers)**

54.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

55.     The Fourth Amendment of the U.S. Constitution protects the rights of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

56.     The Ordinance violates Local 339's and its officers' right to be free from such unreasonable searches and seizures by requiring, as a condition of registration, that Local 339 and its officers execute a Release Authorization authorizing BIC to obtain *any* information from *any* source, including private, sensitive, and confidential information and documents for which Local 339 and its officers have a reasonable expectation of privacy.

57.     The City and its officials' effort to compel Local 339 and its officers to execute the Release Authorization form deprive Local 339 and its officers of their rights guaranteed under the Fourth Amendment of the U.S. Constitution.

58.     By virtue of the foregoing, the Ordinance is barred by the Fourth Amendment of the United States Constitution, as applicable to the States and local subdivisions through the Fourteenth Amendment to the U.S. Constitution.  Local 339 is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and New York Civil Practice Law and Rules § 8601.

## THIRD CLAIM FOR RELIEF
### (Injunctive and Declaratory Relief Based on Violation of the Article I, Section 12 of the New York State Constitution)

59.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

60.     Article I, Section 12 of the New York State Constitution, like the Fourth Amendment to the U.S. Constitution, protects the right of people against unreasonable searches and seizures.  "New York's State Constitution, article I, § 12, affords greater protection against warrantless searches than the U.S. Constitution."  *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 278 (S.D.N.Y. 2009).

61.     The Ordinance and its implementation violates Article I, Section 12 of the New York State Constitution for the same reasons that it violates the Fourth Amendment of the U.S. Constitution.

62.     By virtue of the foregoing, Local 339 is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 1367 and the Court's equitable powers, and an award of reasonable attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

**FOURTH CLAIM FOR RELIEF**
**(Injunctive and Declaratory Relief Based on Violation of the First**
**Amendment of the United States Constitution, Pursuant to 42 U.S.C.**
**§ 1983 and the Court's Equitable Powers)**

63.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

64.     The First Amendment of the United States Constitution, as extended to the States and local subdivisions by the Fourteenth Amendment, protects the freedom of speech and expression, and the right to assemble peacefully and to petition for a redress of grievances.  The right of association extends to labor union activities.  *United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 226 (1967).

65.     The Ordinance chills and unduly restricts the First Amendment freedom of association of the union, its officers and members, by threatening disqualification for union officers who "associate" with persons whom the union officer "should have known" were associated with an organized crime group or had prior convictions for certain offenses.

66.     The Ordinance also chills and unduly restricts the First Amendment freedom of speech and freedom of association of unions and their officers by compelling the union and its officers to "disclose [their] every associational tie."  *Shelton v. Tucker*, 364 U.S. 479, 486 (1960).  The impairment of these First Amendment rights is aggravated by the Ordinance's lack of assurance that the information provided to or obtained by BIC will be kept confidential.

67.     By virtue of the foregoing, the Ordinance is barred by the First Amendment of the United States Constitution, as applicable to the States and local subdivisions through the Fourteenth Amendment to the U.S. Constitution.  Local 339 is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, and reasonable

attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and New York Civil Practice Law and Rules § 8601.

## FIFTH CLAIM FOR RELIEF
**(Injunctive and Declaratory Relief Based on Violation of
Article I, Sections 8 & 9 of the New York State Constitution)**

68.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

69.     Article I, Sections 8 and 9 of the New York State Constitution safeguards free speech and association rights and provides protections that go beyond those set out in the First Amendment.  The Ordinance violates Article I, Section 8 of the New York State Constitution for the same reasons that it violates the First Amendment of the U.S. Constitution.

70.     By virtue of the foregoing, Local 339 is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 1367 and the Court's equitable powers, and an award of reasonable attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

## SIXTH CLAIM FOR RELIEF
**(Injunctive and Declaratory Relief Based on Violation of
Article I, Section 17 of the New York State Constitution)**

71.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

72.     The New York State Constitution, Article I, Section 17, guarantees that "Employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

73.     Article I, Section 17 of the New York State Constitution, which is enshrined in the New York Bill of Rights, "expressly bestows upon employees an unqualified right to bargain collectively through representatives of their own choosing."  *Hernandez v. State*, 173 A.D.3d 105, 113 (N.Y. App. Div. 3d Dep't 2019) (internal quotation marks omitted).  That right is

18

"fundamental," and any statute that infringes upon the right is void unless necessary to promote a compelling state interest and narrowly tailored to achieve that purpose. *Id.*

74.     The Ordinance and its implementation are not necessary to accomplish any compelling State purpose, nor narrowly tailored to achieve that purpose.

75.     By virtue of the foregoing, Local 339 is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 1367 and the Court's equitable powers, and an award of reasonable attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

**SEVENTH CLAIM FOR RELIEF**
**(Injunctive and Declaratory Relief Based on Violation of the New York City**
**Administrative Procedures Act)**

76.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

77.     The Release Authorization and required disclosures in the application forms are "Rules" within the meaning of the New York City Administrative Procedures Act ("CAPA"). NY City Charter § 1041(5).

78.     The application forms, including the Release Authorization, are invalid and void under New York law because they contain requirements different from and in addition to those adopted by BIC pursuant to notice-and-comment rulemaking pursuant to the requirements of CAPA.

79.     By virtue of the foregoing, Local 339 is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 1367 and the Court's equitable powers, and an award of reasonable attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

## EIGHTH CLAIM FOR RELIEF
**(Injunctive and Declaratory Relief Based on State Law Preemption by New York State Labor Law and Violation of New York Municipal Home Rule Law, §§ 10 & 11)**

80.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

81.     The New York State Constitution, Article IX, Section 2(c), and N.Y. Municipal Home Rule Law grant local governments the power to adopt and amend local laws only within the scope of authority granted to them therein, or by State legislative delegation of power, and then only to the extent that such local rules are not inconsistent with the provisions of the state constitution or any general law of the State.  A local law is "inconsistent" with the provisions of New York State law, and thus invalid, where either (i) an express conflict exists between New York State law and local law; or (ii) New York State has revealed an intention that State Law occupy the field.

82.     New York's Municipal Home Rule law expressly prohibits local governments from adopting any local law that "supersedes a state statute, if such law…applies to or affects any provision of…the labor law …or the workers' compensation law."  N.Y. Municipal Home Rule Law § 11.

83.     New York State has occupied the field of labor relations and collective bargaining, to the extent not otherwise occupied and preempted by federal law.

84.     The Ordinance "supersedes a state statute" and "applies to or affects any provision of…the labor law …or the workers' compensation law."  N.Y. Municipal Home Rule Law § 11.

85.     The Ordinance is thus preempted by New York State law, and New York City failed to act within the scope of its legislative grant in adopting the Ordinance.

86.     By virtue of the foregoing, Local 339 is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 1367 and the Court's equitable powers, and an award of reasonable attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue an Order:

a.  Issuing a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, declaring null and void New York City Local Law 55 for the year 2019, along with the associated implementing rules and application forms promulgated by the New York City Business Integrity Commission, on the grounds that it is (i) preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*; (ii) in violation of and preempted by the New York State Constitution and New York State law; (iii) violates the First and Fourth Amendment of the U.S. Constitution; and (iv) violates the New York City Administrative Procedures Act.

b.  Preliminarily and permanently enjoining, pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1367, and the Court's equitable powers, the City of New York, its agencies, agents, servants, employees, and attorneys, and all persons acting in concert or participation with them, from taking any action pursuant to or in enforcement of Local Law 55;

c.  Awarding Plaintiff the costs, disbursements, and expenses of this action, including reasonable counsel fees pursuant to 42 U.S.C. § 1988, New York Civil Practice Law and Rules § 8601, or as otherwise provided by applicable law; and

d.   Granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
          June 22, 2021

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.


By:    /s/ Robert J. Anello_____
         Robert J. Anello
         Edward M. Spiro
         Jacob W. Mermelstein
         Curtis B. Leitner
565 Fifth Avenue
New York, New York 10017
(212) 856-9600 (telephone)
(212) 856-9494 (facsimile)

*Attorneys for Plaintiff United Service
Workers Union Local 339, IUJAT*